STATE OF CONNECTICUT *v.* RAY CHARLES WRIGHT
(SC 15816)

Callahan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued June 2—officially released August 4, 1998

*William J. Shea,* for the appellant (defendant).

*Michael E. O'Hare,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Joseph C. Valdes,* former assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether the legislative classifications of larceny in the second degree by the taking of property from the person of another in violation of General Statutes § 53a-123 (a) (3)[1] (larceny from the person) as a class C felony, and

---

[1] General Statutes § 53a-123 provides in relevant part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . .

"(c) Larceny in the second degree is a class C felony."

robbery in the third degree by the taking of property with the use or threat of immediate use of physical force in violation of General Statutes § 53a-136[2] (simple robbery) as a class D felony, violate the defendant's right to equal protection of the laws under the federal constitution.[3] Following our grant of certification to appeal,[4] the defendant, Ray Charles Wright, appeals from the judgment of the Appellate Court affirming the trial court's judgment of conviction of larceny from the person. *State* v. *Wright*, 46 Conn. App. 616, 700 A.2d 79 (1997). The defendant claims that, by classifying larceny from the person as a class C felony, the penal statutes violate his equal protection rights because the allegedly more serious offense of simple robbery is classified as only a class D felony. The state argues that this classification scheme is rational, and therefore constitutional. We agree with the state and, accordingly, we affirm the judgment of the Appellate Court.

General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] General Statutes § 53a-136 provides: "(a) A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133.

"(b) Robbery in the third degree is a class D felony."

General Statutes § 53a-133 provides: "Robbery defined. A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[4] We granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that the legislative classification of larceny in the second degree, in violation of General Statutes § 53a-123 (a) (3), as a class C felony, and robbery in the third degree, in violation of General Statutes § 53a-133, as a class D felony does not violate the defendant's right to equal protection of the laws under

The Appellate Court stated the facts that the jury reasonably could have found, as follows. "On February 19, 1995, the victim, Angel Rivera, was walking on Capitol Avenue in Hartford when he was approached by the defendant. When the defendant asked Rivera if he was a gang member, Rivera responded that he was not. The defendant then demanded that Rivera remove his coat and give it to him. Rivera complied and the defendant ran away with the coat. Thereafter, Rivera returned home and told his mother, Hilda Cordero, that the defendant had taken his coat. Cordero called the police and reported the incident.

"The next day, Rivera and Cordero were on their way to the Greater Hartford Community Center when they observed the defendant on the corner of Albany Avenue in Hartford. The defendant was wearing the coat that he had taken from Rivera the previous day. Subsequently, Rivera and Cordero drove to the community center, telephoned the police and reported that they had seen the defendant wearing Rivera's coat. Officer Dennis O'Connor of the Hartford police department, who responded to the call, went to the community center, interviewed Rivera and then proceeded to the corner of Albany Avenue where he saw the defendant. O'Connor placed the defendant in his cruiser and drove him back to the community center. Rivera then identified the defendant as the man who had taken his coat, and O'Connor seized the coat the defendant was wearing as evidence and placed him under arrest." Id., 617–18.

The state charged the defendant with one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[5] and one count of larceny from

the federal or state constitution?" *State* v. *Wright*, 243 Conn. 943, 943–44, 704 A.2d 800 (1997).

[5] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight

the person, in violation of § 53a-123 (a) (3). The jury found the defendant not guilty of robbery in the first degree, but guilty of larceny from the person. The trial court rendered judgment in accordance with the verdict, and sentenced the defendant to an eight year term of imprisonment, with execution suspended after five years, and five years of probation.

The defendant appealed to the Appellate Court. The defendant claimed "that [larceny from the person] is a crime of a less serious nature than [simple robbery] because [larceny from the person] does not involve the element of the use or the threat of immediate use of physical force, and that, because the penal statutes assign a greater penalty to larceny [from the person], a class C felony, than they do to [simple robbery], a class D felony, they violate the equal protection clauses of the state and federal constitution." *State* v. *Wright,* supra, 46 Conn. App. 618–19.[6] The Appellate Court rejected this claim, stating: "By classifying [larceny from the person] as a class C felony, the legislature has recognized its serious nature and has classified it accordingly. . . . [W]e conclude that the defendant has failed to demonstrate that the legislature's classification of [larceny from the person] as a class C felony is irrational or unreasonable." (Citations omitted; internal quotation marks omitted.) Id., 619–20. This appeal followed.

The defendant reiterates the claim that he made before the Appellate Court, namely, that the classification in § 53a-123 (a) (3) of larceny from the person as a class C felony, punishable by a maximum of ten years

therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[6] Although the defendant had not raised this claim in the trial court, the Appellate Court addressed it under the rule of *State* v. *Golding,* 213 Conn. 233, 239, 567 A.2d 823 (1989).

imprisonment; see General Statutes § 53a-35a;[7] violates his equal protection rights under the state and federal constitutions. That classification violates his equal protection rights, he claims, because the assertedly more serious offense of simple robbery is classified in § 53a-136 as a class D felony, punishable by only five years imprisonment. General Statutes § 53a-35a.[8] He claims that simple robbery is a more serious offense than larceny from the person because the former necessarily involves the use or threat of immediate use of physical force, whereas the latter, in certain circumstances, may not involve the use or threat of immediate use of force. The defendant claims that "the highest constitutional standard of strict scrutiny" should apply to review of this classification scheme because it affects the length

[7] General Statutes § 53a-35a provides: "Imprisonment for any felony committed on or after July 1, 1981: Definite sentences; terms authorized. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed in accordance with section 53a-46a; (2) for the class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years; (4) for the class B felony of manslaughter in the first degree with a firearm under section 53a-55a, a term not less than five years nor more than forty years; (5) for a class B felony other than manslaughter in the first degree with a firearm under section 53a-55a, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years; (6) for a class C felony, a term not less than one year nor more than ten years, except that for a conviction under section 53a-56a, the term shall be not less than three years nor more than ten years; (7) for a class D felony, a term not less than one year nor more than five years, except that for a conviction under section 53a-60b or 53a-217, the term shall be not less than two years nor more than five years, for a conviction under section 53a-60c, the term shall be not less than three years nor more than five years, and for a conviction under section 53a-216, the term shall be five years; (8) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

[8] See footnote 7 of this opinion.

of his imprisonment and, therefore, directly impinges on his fundamental right of liberty. Alternatively, he argues that if rational basis scrutiny applies to his claim, the classification cannot be supported on any rational basis.

The state claims that rational basis analysis governs the defendant's equal protection challenge. Furthermore, the state argues that the classification of larceny from the person as a class C felony, while simple robbery is classified as a class D felony, passes the rational basis test because the legislature reasonably could have concluded that, under some circumstances, the former is a more serious offense than the latter. Moreover, the state contends, the legislature rationally could have concluded that larceny from the person warranted a more severe sentence on the basis of the ease with which the crime potentially can be committed. We agree with the state and, accordingly, we affirm the judgment of the Appellate Court.

As an initial matter, we note that the defendant, as he conceded at oral argument before this court, has offered no independent analysis of his equal protection claim under the state constitution. Therefore, "we limit our review to the relevant federal constitutional claim." *Johnson* v. *Meehan*, 225 Conn. 528, 543 n.20, 626 A.2d 244 (1993); see also *State* v. *Morant*, 242 Conn. 666, 674 n.2, 701 A.2d 1 (1997); *State* v. *Porter*, 241 Conn. 57, 133 n.77, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998); *State* v. *Matos*, 240 Conn. 743, 748–49 n.9, 694 A.2d 775 (1997); *State* v. *Morales*, 240 Conn. 727, 738 n.12, 694 A.2d 758 (1997).

"In order to analyze the [defendant's claim], we first must detail the principles applicable to equal protection analysis." *State* v. *Morales*, supra, 240 Conn. 738. First, in general, as in any constitutional challenge to the validity of a statutory scheme, the "statut[ory scheme]

is presumed constitutional . . . and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . ." (Citation omitted; internal quotation marks omitted.) *Heller* v. *Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993).

More specifically, "[t]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently." (Internal quotation marks omitted.) *State* v. *Morales*, supra, 240 Conn. 738–39. Thus, the analytical "predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated." *Darak* v. *Darak*, 210 Conn. 462, 473, 556 A.2d 145 (1989).

"The equal protection clause does not require absolute equality or precisely equal advantages [between such similarly situated persons] . . . . *Ross* v. *Moffitt*, 417 U.S. 600, 612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.*, [200 Conn. 562, 577–78, 512 A.2d 893 (1986)]. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. *Dunn* v. *Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). . . . *Franklin* v. *Berger*, 211 Conn. 591, 595, 560 A.2d 444 (1989). Where . . . the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. *Laden* v. *Warden*, [169 Conn. 540, 543, 363 A.2d 1063 (1975)]; see also *McGinnis* v. *Royster*, 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1972); *Dandridge* v. *Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970); *Franklin* v. *Berger*, [supra] 595. Rational

basis review is satisfied so long as there is a plausible policy reason for the classification . . . . *Johnson* v. *Meehan*, [supra, 225 Conn. 536]. [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature. *D.A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 877, 670 A.2d 1278 (1996)." (Citations omitted; internal quotation marks omitted.) *State* v. *Morales*, supra, 240 Conn. 739.

We begin by determining "the standard by which the challenged statute's constitutional validity will be determined." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 756, 687 A.2d 506 (1997). We conclude that rational basis review applies to the defendant's claim because the statute neither impinges upon a fundamental right nor affects a suspect class.

The defendant has not claimed that the statute impinges on a suspect class, nor is there a basis for such a claim. Rather, as in *Chapman* v. *United States*, 500 U.S. 453, 464–65, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991), the defendant argues "that the right to be free from deprivations of liberty as a result of arbitrary sentences is fundamental, and therefore the statutory provision at issue may be upheld only if the [g]overnment has a compelling interest in the classification in question." The Supreme Court in *Chapman* rejected that claim, however, stating: "[W]e have never subjected the criminal process to this sort of truncated analysis, and we decline to do so now. Every person has a fundamental right to liberty in the sense that the [g]overnment may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. . . . But a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and

so long as the penalty is not based on an arbitrary distinction . . . ." (Citations omitted.) Id., 465. As an interpretation of the federal constitution by the United States Supreme Court, this holding necessarily governs the defendant's federal constitutional claim.[9] We therefore conclude that rational basis analysis governs the defendant's claim.

We next undertake the analytical "predicate [of consideration of an equal protection claim, namely] . . . a determination of who are the persons similarly situated." *Darak* v. *Darak*, supra, 210 Conn. 473; see also *State* v. *Campbell*, 224 Conn. 168, 188, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993) ("[w]e disagree with the defendant's claim because the two groups are not similarly situated, as is required in an equal protection claim"). The defendant's claim is predicated upon a comparison between himself, as one who has committed larceny from the person, and those who have committed simple robbery. In our view, there are two difficulties with the defendant's attempt to base an equal protection claim on this comparison.

---

[9] This holding is consistent with previous decisions of this court. See *State* v. *Rao*, 171 Conn. 600, 602, 370 A.2d 1310 (1976) (responding to claim that strict scrutiny test should apply to defendant's equal protection challenge to sentencing, we stated "[b]ecause the possession for sale and the trafficking in marijuana [the crimes for which the penalties were at issue] are not fundamental constitutional rights, the rational basis test is the one applicable in this case"); *State* v. *Delgado*, 161 Conn. 536, 549–50, 290 A.2d 338 (1971) (applying rational basis review to defendant's claim that lack of opportunity to appeal sentence to sentence review division denied his equal protection rights), vacated on other grounds, 408 U.S. 940, 92 S. Ct. 2879, 33 L. Ed. 2d 764 (1972). In claiming that strict scrutiny applies to his constitutional challenge, the defendant relies on our decision in *Laden* v. *Warden*, supra, 169 Conn. 544, in which we indicated that the refusal, under General Statutes (Rev. to 1975) §§ 18-97 and 18-98, "to credit the plaintiff with jail time . . . *directly* impinges on his fundamental right of liberty. . . . Hence his lengthened confinement must be justified by a compelling state interest." (Citations omitted; emphasis added.) *Laden* is distinguishable from the present case, however, because the classifications at issue concerned the way

First, simple robbery and larceny from the person constitute two separate and distinct crimes. The defendant implicitly conceded this point at oral argument before this court when he acknowledged that a defendant who has committed acts satisfying the elements of both crimes could be convicted of and sentenced for both offenses, without violating the constitutional prohibition against double jeopardy.[10] Thus, in our view, those who commit simple robbery and those who commit larceny from the person constitute two separate and distinct legal classes and, therefore, necessarily are not similarly situated for purposes of equal protection analysis.

Second, the defendant does not even attempt to claim that the two classes are similarly situated. His claim, rather, is that those who, like him, have perpetrated larceny from the person have committed a *less* serious crime than those who have taken property through the use or threat of immediate use of force, and that, therefore, his class deserves a *less* serious penalty than the latter class. Thus, rather than challenging disparate treatment vis-a-vis some other similarly situated class, the defendant really is claiming that the penal statutes

in which jail time counted toward completion of a sentence. Those classifications, thus, *directly* affected the claimant's liberty interests in a fashion that is absent in the present case.

[10] See *State* v. *Littles*, 31 Conn. App. 47, 58, 623 A.2d 500, cert. denied, 227 Conn. 902, 630 A.2d 72 (1993) ("This court has held that [larceny from the person] is a separate offense from that of robbery because a taking from a victim's [actual] person as required for [larceny from the person] is not required to satisfy the larceny component of a robbery. . . . Robbery . . . on the other hand, requires . . . a threat of force or the actual use of force. [Because the force element is not] required for [larceny from the person] . . . each statute requires proof of facts that the other does not and the defendant's double jeopardy claim must fail." [Citations omitted.]); *State* v. *De Matteo*, 13 Conn. App. 596, 605, 538 A.2d 1068 (1988) ("defendant's convictions for larceny [from the person] and [simple robbery] were not constitutionally defective, and the separate sentences imposed for those offenses were proper").

are structured arbitrarily and unfairly as between two distinct, differently situated classes, resulting in arbitrary and unfair treatment to his class.

The defendant's claim, thus, is ill-suited to the framework of equal protection analysis. In our view, as a matter of analytical categorization, it would have been brought more appropriately as a substantive due process claim. See *State* v. *Matos*, supra, 240 Conn. 749 ("[t]he guarantee of substantive due process requires that a law be reasonable, rather than arbitrary or capricious, and that its operation has a real and substantial relation to the object to be obtained" [internal quotation marks omitted]); see also *Chapman* v. *United States*, supra, 500 U.S. 465 (in choosing to address defendant's claim that prison sentence was unconstitutional as a due process issue, instead of an equal protection issue, court stated: "in this context . . . an argument based on equal protection essentially duplicates an argument based on due process" [citation omitted]). As we often have done when confronted with ill conceived equal protection claims, however, we choose to proceed in the framework of equal protection analysis by "[a]ssuming arguendo that the two categories of defendants identified by the defendant are similarly situated with respect to the [statutory scheme] . . . ." *State* v. *Matos*, supra, 763; see also *State* v. *Morales*, supra, 240 Conn. 740 ("even if we assume that the two categories of offender identified by the defendant . . . are similarly situated with respect to the statute, there is more than an adequate rational basis for treating them differently"); *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 755 (after concluding that two classes claimant sought to compare were not similarly situated, in order to continue with equal protection analysis court stated: "[n]evertheless, we will assume for the purposes of this case that . . . [the

classes] are similarly situated for equal protection purposes").

Doing so allows us to engage in a rational basis analysis that, for all material purposes, is indistinguishable from the analysis in which we would engage pursuant to a due process claim. See *State* v. *Matos*, supra, 240 Conn. 750 (test in rational basis review under substantive due process doctrine is whether "the challenged policy [or statutory scheme] has [a] reasonable relationship to any legitimate state purpose" [internal quotation marks omitted]); *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 756 (under rational basis equal protection review, "[i]f the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge" [internal quotation marks omitted]); *Johnson* v. *Meehan*, supra, 225 Conn. 536 ("[r]ational basis [review under federal constitution's equal protection clause] is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational" [citations omitted; internal quotation marks omitted]).

Contrary to the defendant's contentions, we conclude that the legislature's decision to classify larceny from the person as a class C felony, while classifying simple robbery as a class D felony, is supported by a rational basis. The defendant implicitly acknowledges the legitimacy of the legislature's interest—as a part of its general objective of protecting the public welfare—in establishing penalties for crimes, generally, and in assigning more severe penalties to more serious

offenses, specifically. His claim, rather, is that the classifications at issue do not rationally serve that interest. We are not persuaded.

In our view, the legislature reasonably could have concluded that, as a categorical matter, larceny from the person is a more serious offense than simple robbery, and therefore warrants a more severe penalty. As the state points out, each crime is an aggravated form of larceny. The differentiating factor is the nature of the aggravating characteristic of each offense. "A person is guilty of larceny in the second degree [by taking from the person] when he commits larceny as defined in section 53a-119 and . . . (3) *the property, regardless of its nature or value, is taken from the person of another* . . . ." (Emphasis added.) General Statutes § 53a-123; see also *State* v. *Crowe*, 174 Conn. 129, 134, 384 A.2d 340 (1977) ("larceny from the person requires an actual trespass to the person of the victim"). In contrast, a person is guilty of simple robbery in violation of § 53a-136 "when, in the course of committing a larceny, *he uses or threatens the immediate use of physical force upon another person* for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." (Emphasis added.) General Statutes § 53a-133. Thus, the distinguishing characteristic of larceny from the person is that the property is taken from the person of the victim; the distinguishing characteristic of simple robbery is that force or the threat of immediate force is used to facilitate the taking—whether the property is taken from the person or not. In our view, the legislature rationally could have concluded that the "trespass to the person of the victim"; *State* v. *Crowe*, supra, 134; that inheres in larceny from

the person potentially is a source of greater harm than the force or threat of force that characterizes a simple robbery.

As the state has noted, such a trespass to the person rationally could be viewed as a serious concern because: the close proximity can lead to confrontation and escalating violence; a risk of injury invariably accompanies the physical contact; and the invasion of the person, especially on the street or in some other public setting—where the legislature might reasonably have believed the crime most often occurs—is a degrading, humiliating and frightening experience. Indeed, the legislature's evident belief that the invasion of the person is a serious potential source of harm finds support in the decisions of the appellate tribunals of this state. See, e.g., *State* v. *Crowe*, supra, 174 Conn. 134 ("[b]ecause of the trespass to the person, [larceny from the person] is a serious crime in itself so that the value of the property stolen does not enter into the magnitude of the crime"); *State* v. *Arena*, 33 Conn. App. 468, 486, 636 A.2d 398 (1994), aff'd, 235 Conn. 67, 663 A.2d 972 (1995) ("[t]he stealing of property from the person has been from an early period under the English statutes treated as a much graver and more heinous offense than ordinary or common theft—partly . . . because of the greater liability of endangering the person or life of the victim" [internal quotation marks omitted]).

The legislature reasonably could have concluded that these elements of harm or potential harm outweigh any concerns regarding the harm associated with the force, or threat of force, in a simple robbery. In this regard, it is essential to note that the force used or threatened in a simple robbery is typically of a relatively low level. That is because, pursuant to the statutory scheme governing robbery offenses, the degree of the offense and, correspondingly, the maximum sentence, advance as greater force is used or threatened. As noted by the

state, when a robbery involves more than one perpetrator, the use or threatened use of a dangerous instrument or deadly weapon, or results in serious injury to the victim, it constitutes a first or second degree robbery, and is classified as a class B or class C felony punishable by twenty or ten years imprisonment, respectively. See General Statutes §§ 53a-134, 53a-135 and 53a-35a.[11] Thus, the force used or threatened in a typical simple robbery does not involve any sort of weapon, and is perpetrated by a single assailant. At its mildest, such force conceivably could involve no more than a threat of a pinch, a scratch or a slap. We believe that the legislature reasonably could have concluded that force, or the threat of force, at this level is less offensive than the trespass on the person inherent in a typical larceny

---

[11] General Statutes § 53a-134 provides: "Robbery in the first degree: Class B felony. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

General Statutes § 53a-135 provides: "Robbery in the second degree: Class C felony. (a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

See footnote 7 of this opinion for the text of § 53a-35a.

from the person such as purse snatching or other "grab and run" thefts.

In support of his claim, the defendant adduces hypothetical scenarios featuring conceivable simple robberies that are more serious than conceivable larcenies from the person. That such scenarios can be envisioned, however, does not avail the defendant. "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because, in practice, it results in some inequality. . . . The problems of government are practical ones and may justify, if they do not require, rough accommodations . . . ." (Citations omitted; internal quotation marks omitted.) *Heller* v. *Doe*, supra, 509 U.S. 321.

Moreover, as the state points out, pursuant to its general objective of protecting the welfare of the public, the legislature also has a legitimate interest in deterring crime by setting more severe penalties for crimes that the legislature reasonably perceives as being more easily committed than other crimes, regardless of the relative seriousness of the prohibited conduct. When confronted with an equal protection challenge to a statutory scheme that assigned the same penalty to the crime of possession with intent to distribute marijuana as was assigned to possession with intent to distribute other, allegedly more dangerous drugs—namely, amphetamines and barbiturates—we stated that "[i]n setting penalties, *[the legislature] is not limited to an assessment of harm.* Even if barbiturates and amphetamines pose greater health hazards than marijuana, [the legislature] is entitled to conclude that . . . such penal purposes as *general deterrence* will be appropriately served by such a penalty." (Emphasis added; internal quotation marks omitted.) *State* v. *Rao*, 171 Conn. 600,

605, 370 A.2d 1310 (1976); see also *United States* v. *Stevens*, 19 F.3d 93, 97 (2d Cir. 1994) (in rejecting equal protection challenge to federal statutory scheme providing higher penalty for possession with intent to distribute crack cocaine than powder cocaine, court identified as one of rational bases upholding scheme "greater accessibility" of crack cocaine compared to powder cocaine); *United States* v. *Lattimore*, 974 F.2d 971, 975 (8th Cir. 1992), cert. denied, 507 U.S. 1020, 113 S. Ct. 1819, 123 L. Ed. 2d 449 (1993) ("the ease with which drug dealers can carry and conceal" crack cocaine constituted rational basis for more severe penalty for possession with intent to distribute it, compared to powder cocaine); *United States* v. *Cyrus*, 890 F.2d 1245, 1248 (D.C. Cir. 1989) (in identifying rational bases supporting more severe penalty for possession with intent to distribute crack, compared to powder cocaine, court noted that crack "is far more accessible due to its relatively low cost . . . [a]nd it has experienced an explosion of popularity").

Comparable concerns regarding the ease with which the crime can be committed rationally could have supported the legislature's decision to penalize larceny from the person as a class C felony, while penalizing simple robbery as only a class D felony. The legislature reasonably could have concluded that a number of typical characteristics render typical larcenies from the person, such as purse snatching, particularly easy to commit, including: the fact that a purse can be easily grasped and pulled away from its owner; the fact that the crime can be committed in an instant; the fact that the perpetrator often can make a speedy getaway because the crime is committed on the run; and the fact that no verbal interaction with the victim is required in order to complete the crime. Indeed, such a conclusion finds support in the decisions of the appellate tribunals of this state. See *State* v. *Arena*, supra, 33

Conn. App. 486 ("[t]he stealing of property from the person has been from an early period under the English statutes treated as a much graver and more heinous offense than ordinary or common theft—partly by reason of the ease with which it could be perpetrated and the difficulty of guarding against it" [internal quotation marks omitted]). Moreover, the legislature reasonably could have concluded that a typical simple robbery lacks most of these characteristics and, therefore, is generally more difficult to commit, thereby warranting a lesser penalty.

The defendant notes that when the current Penal Code was enacted in 1969, robbery in the third degree was a class D felony as it is today, while larceny from the person was classified as larceny in the third degree and was a class B misdemeanor punishable by a maximum penalty of six months in prison. See Public Acts 1969, No. 828, §§ 126, 138. The defendant claims that "[t]he subsequent evolution of the offense of [larceny from the person] into a class C felony punishable by ten years in prison is not even commented on in the legislative history" of the relevant public acts—namely, § 8 of No. 73-639 of the 1973 Public Acts, which categorized larceny from the person as second degree larceny, which at the time was a class D felony; and § 2 of No. 82-271 of the 1982 Public Acts, which classified second degree larceny, including larceny from the person, as a class C felony. The defendant claims that this alleged absence of any explanation from the legislature as to its reasoning in classifying larceny from the person as a class C felony precludes this court from concluding that that classification is based upon a rational basis. This claim lacks merit.

First, contrary to the defendant's representations, the legislative history is not devoid of indications of the legislature's reasoning in classifying larceny from the person as a class C felony. Specifically, consistent with

our earlier analysis, the legislative history of Public Act 82-271 suggests that in raising the classification of larceny in the second degree, including larceny from the person, from a class D felony to a class C felony, the legislature strove to create the proper deterrent effect. See 25 S. Proc., Pt. 10, 1982 Sess., p. 3063, remarks of Senator Howard T. Owens, Jr. ("[t]his [b]ill is really, without going into great detail, what it really does is take into consideration . . . the various types of crimes that are prosecuted, making sure that those who are offending and need more strong deterrent [e]ffects, the penalties are increased, and the ones where there is not much activity decreased").

Moreover, even if there were no relevant legislative history, the defendant's argument would fail. "In making this claim, the [defendant] misconceives the appropriate standard for reviewing an equal protection challenge to legislation that does not infringe on a fundamental right or affect a suspect class. *Nordlinger* v. *Hahn*, [505 U.S. 1, 15, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)]. [T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification. Id. This court's review requires only that [some purpose or rationale] may conceivably or may reasonably have been the purpose or policy of the relevant decisionmaker. Id." (Internal quotation marks omitted.) *Johnson* v. *Meehan*, supra, 225 Conn. 539–40. Because we have already identified two rationales— namely, punishing more severely a more serious offense, and establishing a level of deterrence commensurate with the ease of commission of the crime—that conceivably could have constituted a rational basis for the legislature's decision to penalize larceny from the person more severely than simple robbery, we reject the defendant's argument.

We also reject the defendant's argument that *State* v. *Jenkins*, 198 Conn. 671, 504 A.2d 1053 (1986), governs the present case. In *Jenkins*, the defendant had been convicted of kidnapping in the first degree in violation of General Statutes (Rev. to 1985) § 53a-92 (a) (2) (C).[12] As a class A felony, that crime was punishable by a mandatory minimum sentence of ten years imprisonment. *State* v. *Jenkins*, supra, 675. In accordance with that mandatory minimum sentence, the trial court had refused to consider suspension of the defendant's sentence at any point prior to the completion of ten years of incarceration. Id., 673–74. On appeal, the defendant claimed that this mandatory minimum sentence should not apply to him because, pursuant to General Statutes § 53a-92a,[13] a person guilty of the more serious crime of kidnapping in the first degree with a firearm would face only a one year minimum sentence. *State* v. *Jenkins*, supra, 673–74. After examining the relevant legislative history, we concluded that the discrepancy was due to a "legislative error that mistakenly assign[ed] a lesser penalty to a greater crime." Id., 677. We noted that a "constitutional quagmire . . . would confront

---

[12] General Statutes (Rev. to 1985) § 53a-92 provides in relevant part: "Kidnapping in the first degree. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to . . . (C) terrorize him or a third person . . . ."

[13] General Statutes § 53a-92a provides: "Kidnapping in the first degree with a firearm: Class A felony: One year not suspendable. (a) A person is guilty of kidnapping in the first degree with a firearm when he commits kidnapping in the first degree as provided in section 53a-92, and in the commission of said crime he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be convicted of kidnapping in the first degree and kidnapping in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Kidnapping in the first degree with a firearm is a class A felony for which one year of the sentence imposed may not be suspended or reduced by the court."

us"; id., 680; if we attempted to apply that irrational sentencing structure. Therefore, we interpreted the relevant statutes such that the provisions in § 53a-92a that provided the lesser penalty applied to both the lesser and the greater crime, and we remanded the case for resentencing in accordance with that interpretation. Id.

*Jenkins* is distinguishable from the present case for two reasons. First, as the state points out, "there can be no question that kidnapping in the first degree with a firearm is a more serious crime than kidnapping in the first degree. The only difference between the two crimes is that one has an additional element of the use of a firearm. Indeed, kidnapping in the first degree is a lesser included offense of kidnapping in the first degree with a firearm." Under those circumstances, we simply could not discern a rational basis for the discrepant sentencing scheme. In contrast, as we have explained previously, in the present case the defendant's claim is based on a comparison between the sentences for two separate and distinct crimes, and, thus, there is ample scope for discovery of a rational basis for the different penalties for each offense. Second, in contrast to the situation in *Jenkins*, there is no indication that the legislative scheme at issue in the present case is the product of a legislative error.

Similarly, *State* v. *O'Neill*, 200 Conn. 268, 511 A.2d 321 (1986), does not support the defendant's claim. In *O'Neill*, the defendant had been found guilty of the crime of arson in the first degree in violation of General Statutes § 53a-111 (a) (1),[14] a class A felony. *State* v. *O'Neill*, supra, 285. The trial court imposed the statutory

---

[14] General Statutes § 53a-111 provides in relevant part: "Arson in the first degree: Class A felony. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . ."

mandatory minimum sentence of ten years imprisonment, "indicating that, in its view, the statutory scheme afforded it no discretion" to suspend any portion of that sentence. Id. On appeal the defendant claimed that his sentence was unconstitutionally arbitrary and irrational because, under the rule established in *State* v. *Dupree*, 196 Conn. 655, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985), a trial court properly could suspend the mandatory sentence provided by General Statutes § 53a-54d[15] for arson murder. *State* v. *O'Neill*, supra, 285–86. Citing *Jenkins*, we concluded that it would be arbitrary and irrational for the defendant, "who acted with the less culpable intent and who caused a less serious result than a defendant who commits arson murder [to] receive the greater penalty—a mandatory nonsuspendible ten year minimum term." Id., 289.

Like *Jenkins*, *O'Neill* is distinguishable from the present case. Similar to the situation in *Jenkins*, there can be no question that arson murder is a more serious offense than first degree arson "because arson murder involves both arson and [causing] a death" in the course of the arson. Id. Therefore, it was impossible to conceive of any rational basis for assigning a more serious penalty to first degree arson than to arson murder. In contrast, in the present case, because of the entirely distinct nature of larceny from the person and simple robbery, as we have explained, rational bases for assigning a more severe penalty to the former readily can be conceived.

Finally, we also reject the defendant's contention that the classification of larceny from the person as a class

---

[15] General Statutes § 53a-54d provides: "Arson murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

C felony, while simple robbery is classified as only a class D felony, is arbitrary and irrational because the same conduct can, in certain situations, constitute either offense. This argument seems to be based on the erroneous assumption that an assailant who engages in conduct that satisfies the elements of both larceny from the person and simple robbery can be convicted of and sentenced for only one of those offenses. As noted, however, the defendant has acknowledged that these two crimes constitute two separate and distinct offenses, and that such an assailant legitimately could be convicted of and sentenced for both crimes. See footnote 10 of this opinion. In light of this acknowledgment, the defendant's contention amounts to the claim that whenever a single course of conduct potentially constitutes more than one offense, all of those offenses must receive the same penalty.

This assertion clashes with our decisions upholding, in the face of challenges based on the prohibition against double jeopardy, varying sentences pursuant to convictions of different offenses arising out of the same act or transaction.[16] In addition, if accepted, it would

---

[16] See, e.g., *State* v. *Nixon*, 231 Conn. 545, 563, 651 A.2d 1264 (1995) (convictions, arising out of same acts, of both: [1] assault in second degree, as accessory, in violation of General Statutes [Rev. to 1991] §§ 53a-60 [a] (5) and 53a-8, class D felony punishable by maximum sentence of five years imprisonment; see General Statutes [Rev. to 1991] § 53a-35a; and [2] assault of correction officer, as accessory, in violation of General Statutes [Rev. to 1991] §§ 53a-167c [a] [1] and 53a-8, class C felony punishable by maximum sentence of ten years imprisonment; see General Statutes [Rev. to 1991] § 53a-35a; did not constitute double jeopardy); *State* v. *Kulmac*, 230 Conn. 43, 69–70, 644 A.2d 887 (1994) (convictions, arising out of same acts, of both: [1] first degree sexual assault in violation of General Statutes § 53a-70 [a], class B felony punishable by maximum sentence of twenty years imprisonment; see General Statutes [Rev. to 1987] § 53a-35a; and [2] second degree sexual assault in violation of General Statutes [Rev. to 1987] § 53a-71 [a] [1], class C felony, punishable by maximum sentence of ten years imprisonment; see General Statutes [Rev. to 1987] § 53a-35a; did not constitute double jeopardy); *State* v. *Devino*, 195 Conn. 70, 71–72, 485 A.2d 1302 (1985) (convictions, arising out of same acts, of both: [1] possession of

thrust upon the legislature the overwhelming burden of anticipating all instances of conceivable overlap in the offenses delineated in the penal statutory scheme, and designing the system such that the same level of penalty applied to any such potentially overlapping offenses. Although we believe that any penal system designed under such a rule would give rise to an unending stream of bizarre results, rather than attempting to enumerate such results, it suffices to say that such a burden is completely inconsistent with rational basis review.

The judgment is affirmed.

In this opinion the other justices concurred.

narcotic substance in violation of General Statutes [Rev. to 1981] § 19-481 [a], punishable by maximum sentence of seven years imprisonment and/or fine of $3000 for first offense; fifteen years and/or $5000 for second offense; and twenty-five years and/or $10,000 for subsequent offense; and [2] sale of narcotic substance in violation of General Statutes [Rev. to 1981] § 19-480 [a], punishable by maximum sentence of fifteen years imprisonment and/or fine of $3000 for first offense; and thirty years and/or $5000 for each subsequent offense did not constitute double jeopardy); *State* v. *Perruccio,* 192 Conn. 154, 162, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984) (convictions, arising out of same acts, of both: [1] sexual assault in fourth degree in violation of General Statutes [Rev. to 1981] § 53a-73a [a] [1] [A], class [A] misdemeanor punishable by maximum sentence of one year imprisonment; see General Statutes [Rev. to 1981] § 53a-36; and [2] risk of injury to minor in violation of General Statutes [Rev. to 1981] § 53-21, punishable by maximum sentence of ten years imprisonment and/or fine of $500 did not constitute double jeopardy).