## STATE OF CONNECTICUT *v.* DAVID MORALES
(15405)

Callahan, C. J., and Borden, Norcott, McDonald and Peters, Js.

Argued February 19—officially released May 6, 1997

*Patricia A. King,* for the appellant (defendant).

*Timothy J. Sugrue,* executive assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is whether a child[1] who has been transferred, pursuant to General Statutes (Rev. to 1995) § 46b-127,[2] from the

---

[1] General Statutes § 46b-120 (1) defines "child" as "any person under sixteen years of age . . . ."

[2] General Statutes (Rev. to 1995) § 46b-127 provides: "Mandatory transfer of child charged with certain felonies to regular criminal docket. (a) The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for (A) the violation of section 53a-55a, 53a-56a, 53a-60a, 53a-60c, 53a-72b, 53a-92a, 53a-94a, 53a-102a, 53a-103a or subdivision (2) of subsection (a) of section 53a-135, (B) the violation of section 53a-59, 53a-70a, 53a-101 or 53a-134 committed with a firearm or (C) the commission in the course of a single transaction of any felony that is a serious juvenile offense, as defined in section 46b-120, other than murder under sections 53a-54a to 53a-54d, inclusive, and of a violation of subsection (a) of section 29-35, provided such offense was committed after such child attained the age of fourteen years and provided further the prosecuting authority for juvenile matters, after consultation with the state's attorney, has moved for such transfer; (3) any child referred for the violation of any provision of

docket for juvenile matters to the regular criminal docket of the Superior Court on a charge of murder must be returned to the docket for juvenile matters if

title 53a which is designated as a class A felony, other than murder or any such provision specified in subdivision (2) of this subsection, if such violation was committed after such child attained the age of fourteen years, provided such child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (4) any child referred for the violation of any provision of title 53a which is designated as a class B felony, other than any such provision specified in subdivision (2) of this subsection, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. The prosecuting authority for juvenile matters, in deciding whether to seek the transfer of a child under subdivision (2) of this subsection, shall consider whether such child is a person with mental retardation, as defined in section 1-1g, or suffers from a substantial mental disorder, as defined in section 17a-75. Not later than ten days after the filing of a motion to transfer a child to the regular criminal docket under subdivision (2) of this subsection, the child may file a notice of intent to request a hearing under subsection (c) of this section.

"(b) No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront the witnesses against him. The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory information.

"(c) If the court makes a finding of probable cause, any child referred pursuant to subdivision (2) of subsection (a) of this section may request an immediate hearing at which he shall have the right to present evidence that he should not be transferred to the regular criminal docket because (1) he is a person with mental retardation, as defined in section 1-1g, or (2) he suffers from a substantial mental disorder, as defined in section 17a-75 or (3) an alternative plan or placement within the juvenile justice system has been arranged that will protect the community from further criminal conduct by the child. If the court, after such hearing, finds that a factor specified in subdivision (1), (2) or (3) of this subsection has been proven by a preponderance of the evidence, it shall not transfer such child to the regular criminal docket.

he is acquitted of murder but convicted of the lesser included offense of manslaughter in the first degree. The defendant, David Morales, contends that allowing a child acquitted of murder but convicted of manslaughter to remain on the regular criminal docket for sentencing is contrary to both the language of § 46b-127 and the equal protection and due process provisions of the federal constitution. We disagree with the defendant's statutory and constitutional arguments and affirm the judgment of the Appellate Court, which affirmed the trial court's sentencing of the defendant for manslaughter as an adult.

The following facts and procedural history are relevant to this appeal. When the defendant was fifteen years old, he was the driver of a vehicle involved in a gang related drive-by shooting in New Haven that resulted in the death of a sixteen year old male. As a result of the defendant's involvement in the shooting, he was arrested by warrant and, in a petition of delinquency, charged with murder in violation of General Statutes §§ 53a-8 and 53a-54a.[3] On June 12, 1991, the

---

"(d) Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age, except that no such child shall be placed in a correctional facility but shall be maintained in a facility for children and youth until he attains the age of sixteen years or until he is sentenced, whichever occurs first. Such child shall receive credit against any sentence imposed for time served in a juvenile facility prior to the effectuation of the transfer. A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years."

Section 46b-127 was substantially revised in 1995. See Public Acts 1995, No. 95-225, § 13. Unless otherwise indicated, all references to § 46b-127 are to that statute as revised to 1995.

[3] General Statutes § 53a-8 provides in relevant part: "Criminal liability for acts of another. (a) A person, acting with the mental state required for

state filed a motion to transfer the defendant to the regular criminal docket pursuant to § 46b-127. After an evidentiary hearing, the trial court transferred the defendant on the basis of its finding of probable cause to believe that the defendant had committed murder.[4]

Following the transfer of the defendant to the regular criminal docket, another probable cause hearing was held pursuant to General Statutes § 54-46a.[5] That court also found probable cause to believe that the defendant had committed murder in violation of §§ 53a-8 and 53a-54a. The state then filed an amended two count information charging the defendant with murder and with conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[6] and 53a-54a.

commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . .

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a . . . ."

[4] The defendant previously filed an unsuccessful appeal of the trial court's finding of probable cause. See *In re David M*, 29 Conn. App. 499, 615 A.2d 1082 (1992).

[5] General Statutes § 54-46a (a) provides in relevant part: "No person charged by the state . . . shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause. . . ."

[6] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees

In August, 1994, the defendant was tried by a jury. At the defendant's request, the trial court instructed the jury as to the lesser included offenses of manslaughter in the first and second degrees. The jury convicted the defendant of manslaughter in the first degree in violation of General Statutes §§ 53a-8 and 53a-55 (a) (1),[7] and acquitted him of the charges of murder and conspiracy to commit murder.

Thereafter, the defendant moved to have his case returned to the juvenile docket for further proceedings. The trial court denied the motion and sentenced the defendant to a term of incarceration of eighteen years, suspended after fourteen years, with five years probation. The defendant appealed to the Appellate Court, which affirmed the judgment of the trial court in a per curiam opinion based upon its decision in *State* v. *Cuffee*, 32 Conn. App. 759, 630 A.2d 621 (1993). *State* v. *Morales*, 40 Conn. App. 935, 671 A.2d 867 (1996). We granted the defendant's petition for certification to determine: (1) whether, as a matter of statutory construction, a child who is transferred to the regular criminal docket pursuant to § 46b-127, on the basis of a finding of probable cause to believe that he has committed murder, must be transferred back to the juvenile docket if he is found guilty of the lesser included offense of manslaughter in the first degree; and (2) whether the statute, if construed not to require such a retransfer, violates the child's constitutional rights to equal protection and due process. *State* v. *Morales*, 237 Conn. 907, 674 A.2d 1333 (1996). We affirm the judgment of the Appellate Court.

with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[7] General Statutes § 53a-55 provides in relevant part: "Manslaughter in the first degree: Class B felony. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

I

Section 46b-127 provides that the juvenile court must transfer to the regular criminal docket of the Superior Court all cases in which there has been a finding of probable cause that a child has committed murder in violation of §§ 53a-54a through 53a-54d and the alleged crime occurred after the child had attained fourteen years of age. Section 46b-127 (d) also provides that "[u]pon the effectuation of the transfer, [the] child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age . . . . Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years." We are asked to determine how the legislature intended this language to be applied where, as here, a child is properly transferred to the regular criminal docket on the basis of a finding of probable cause to believe that he has committed murder, but is later acquitted of murder by a jury and convicted of the lesser included offense of manslaughter. As noted above, in 1993, the Appellate Court concluded that a child transferred to the regular criminal docket on a murder charge could be sentenced as an adult if that child was convicted of a lesser included offense. *State* v. *Cuffee*, supra, 32 Conn. App. 764–65. Since *Cuffee*, the legislature has made significant changes to the juvenile transfer statutes but has not enacted legislation to overrule that decision. See Public Acts 1995, No. 95-225, § 13; Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6. While we are aware that legislative inaction is not necessarily legislative affirmation; see *Conway* v. *Wilton*, 238 Conn. 653, 662, 680 A.2d 242 (1996); we also "presume that the legislature is aware of [the Appellate Court's] inter-

pretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 439, 525 A.2d 91 (1987). The defendant has failed to articulate a convincing rationale to alter the Appellate Court's 1993 interpretation of § 46b-127, and we see no reason to do so.

We first consider the language of § 46b-127 (d), which provides that, "[u]pon the effectuation of the transfer, [the] child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age . . . ." That language, which has not changed since the time of the decision in *Cuffee*, dictates that children who are validly transferred from the juvenile docket to the regular criminal docket are to be prosecuted in all respects, including sentencing, as though they were adults.[8] It is undisputed that an adult tried for murder may be convicted of any lesser included form of homicide. *State* v. *Rodriguez*, 180 Conn. 382, 398–408, 429 A.2d 919 (1980). General Statutes § 53a-45 (c) provides that "[t]he court or jury before which *any person . . . held to answer for murder* after a hearing conducted in accordance with the provisions of section 54-46a is tried may find such person guilty of homicide in a lesser degree than that charged." (Emphasis added.) The defendant in this case certainly falls within the category of "any person . . . held to answer for murder" and § 53a-45 (c) therefore would apply to the charges against him unless the legislature has carved out a specific exception to § 53a-45 (c).

The defendant asks us to find such an exception in the last sentence of § 46b-127 (d), which provides that "[i]f the action is dismissed or nolled or if such child

---

[8] That authority is subject only to the condition that, if probable cause for the transferred charge is found not to exist, the adult prosecution ends, and the juvenile is transferred back to the juvenile docket. *State* v. *Torres*, 206 Conn. 346, 358, 538 A.2d 185 (1988).

is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years." The defendant argues that murder is the only "charge for which he was transferred" and that, when the jury found him not guilty of that charge, the court was obligated to send his case back to the juvenile docket. We are not persuaded.

The defendant's interpretation of § 46b-127 would, within the context of cases transferred from the juvenile docket to the regular criminal docket, require a departure from our well established rules pertaining to lesser included offenses. Under the defendant's interpretation, in a transferred case a jury would never deliberate regarding a lesser included offense because the jury is routinely instructed, as the jury was in this case, that it may not begin to deliberate regarding any lesser included offense until it has concluded that the defendant is not guilty of the greater offense. See *State* v. *Sawyer*, 227 Conn. 566, 587, 630 A.2d 1064 (1993). Before it ever reached the lesser included offense, the jury would have had to conclude that the defendant was not guilty of the greater offense. Further deliberations regarding lesser included offenses would be meaningless under the defendant's construction of the statute and, therefore, trial courts presumably would be precluded from giving lesser included offense instructions.[9]

[9] The defendant suggested at oral argument that, even under his construction of § 46b-127, lesser included offense instructions could still be given and deliberated in cases such as this, in apparent contradiction of his argument that at the point the jury concludes that a defendant is not guilty of the crime that supported the transfer, that defendant must be returned to the juvenile docket. The defendant claims that if a jury found him to be guilty of a lesser included offense, he could at that point be sent back to the juvenile docket "for proceedings consistent with the jury's finding that the state proved beyond a reasonable doubt that [the defendant] committed manslaughter in the first degree." Aside from the potential double jeopardy problems arising from such a proceeding, which we need not address; see *Breed* v. *Jones*, 421 U.S. 519, 531–41, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975) (violation of double jeopardy to prosecute in Superior Court after delin-

Forcing the jury to choose between murder and acquittal in a case where there is evidence of a less culpable state of mind "would limit the jury's function of determining questions of fact and undermine a defendant's right to a trial by jury." *State* v. *Rodriguez*, supra, 180 Conn. 404. We are unable to find any indication that the legislature intended that the state and the child defendant engage in this version of Russian roulette.[10]

Our interpretation finds further support in the provision of § 46b-127 (d) that "[a]ny child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. . . ." It is clear that had the defendant pleaded guilty to manslaughter in the first degree, his case would have remained on the regular criminal docket and he would have been sentenced as an adult and subject to a maximum penalty of twenty years imprisonment. The defendant contends, however, that because he elected to go to trial and opted to request a lesser included offense instruction on manslaughter, he is subject to a maximum penalty in juvenile court, if it is assumed the court could penalize him at all, of only four years commitment to the department of children and families pursuant to General Statutes (Rev. to 1995) § 46b-141 (a).[11] This argument violates the

quency adjudication in juvenile court); the defendant's argument for this sort of criminal collateral estoppel is unsupported by the relevant statutory scheme pertaining to delinquency adjudications in juvenile court. There is no suggestion that the state may bypass the traditional methods of adjudicating a child as a juvenile delinquent merely by submitting to the court a jury's finding that the defendant committed manslaughter in the first degree. See General Statutes §§ 46b-120 through 46b-141. If the legislature had intended to create such a novel procedural mechanism, the legislature would have provided for it. We are unwilling to create such a mechanism by judicial fiat.

[10] The defendant curiously argues in his brief that the state's construction of the statute would "impermissibly [burden] the common-law right to consideration of lesser included offenses . . . ."

[11] General Statutes (Rev. to 1995) § 46b-141 provides in relevant part: "Commitments to be indeterminate. Extension. (a) Except as otherwise limited by subsection (e) of section 46b-140, commitment of children

canon of construction requiring that we construe statutes as a whole in order to reconcile their separate parts; *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996); and, more starkly, the canon that counsels us to avoid constructions of statutes that lead to absurd consequences or bizarre results. *State* v. *Hill*, 237 Conn. 81, 102, 675 A.2d 866 (1996). We do not believe that the legislature intended those child defendants who are transferred to the regular docket and subsequently are convicted of manslaughter in the first degree after a full trial to be afforded dramatically more lenient treatment than those juveniles who voluntarily plead guilty to manslaughter in the first degree. The defendant's proposed construction would provide transferred juvenile defendants with a significant disincentive to plead guilty. Such a construction is at odds with common sense and contradicts the policy encouraging plea bargaining. See *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995) ("plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts"). We conclude that § 46b-127 must be read to authorize the same sentences for those children convicted of lesser included offenses after a full trial as for those who plead guilty to lesser included offenses.

Only by interpreting the phrase "the charge for which he was transferred" in the last sentence of § 46b-127 (d) to include not only the specific statutory offense for which the defendant was transferred but also any lesser included offenses, can we find internal harmony

adjudged delinquent by the superior court to the department of children and families shall be for (1) an indeterminate time up to a maximum of eighteen months, or (2) when so adjudged on a serious juvenile offense, up to a maximum of four years at the discretion of the court, unless extended as hereinafter provided. . . ."

between that last sentence and the preceding sentences providing that a transferred child shall be treated the same as an adult defendant "if convicted" or if he pleads guilty to any lesser included offense. Once probable cause was found by both the juvenile court and the adult court, the defendant was on notice that he could be prosecuted for murder and for applicable lesser included offenses. See *State* v. *Rodriguez*, supra, 180 Conn. 398–408. Otherwise, he would not be treated the same as a sixteen year old, as mandated by § 46b-127 (d). When a juvenile, after receiving all legislative safeguards, is transferred to the regular criminal docket and prosecuted for murder, the statute places him in the same position as an adult. This necessarily includes not only the possibility of conviction of appropriate lesser included offenses, but also the defendant's right to request instructions pertaining to such offenses.

## II

Having rejected the defendant's statutory claim, we consider the defendant's alternative argument that the statute, as we have construed it, violates his federal constitutional rights to equal protection and due process.[12] Although unclear, the defendant's equal protection argument appears to be that he is similarly situated to those children who are adjudged delinquent on the basis of findings in juvenile court that they have committed manslaughter in the first degree, and that there is no rational basis for subjecting him to more severe penalties than are imposed on those who are prosecuted in the juvenile court. We disagree.

In order to analyze the constitutionality of § 46b-127, we first must detail the principles applicable to equal protection analysis. "To implicate the equal protection clauses under the state and federal constitutions . . .

[12] The defendant provides no independent analysis under the state constitution and we, therefore, will undertake no such analysis in this case.

it is necessary that the state statute in question, either on its face or in practice, treat persons standing in the same relation to it differently." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 755, 687 A.2d 506 (1997). "The equal protection clause 'does not require absolute equality or precisely equal advantages . . . .' *Ross* v. *Moffitt*, 417 U.S. 600, 612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.*, [200 Conn. 562, 577–78, 512 A.2d 893 (1986)]. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider 'the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification.' *Dunn* v. *Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972)." (Citations omitted.) *Franklin* v. *Berger*, 211 Conn. 591, 595, 560 A.2d 444 (1989). Where, as here, "the classification at issue neither impinges upon a fundamental right nor affects a suspect group it 'will withstand constitutional attack if the distinction is founded on a rational basis.' *Laden* v. *Warden*, [169 Conn. 540, 543, 363 A.2d 1063 (1975)]; see also *McGinnis* v. *Royster*, 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1972); *Dandridge* v. *Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970)." *Franklin* v. *Berger*, supra, 211 Conn. 595. Rational basis review "is satisfied so long as there is a plausible policy reason for the classification . . . ." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Meehan*, 225 Conn. 528, 536, 626 A.2d 244 (1993). "[I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature." *D.A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 877, 670 A.2d 1278 (1996). We conclude that there is a conceivable rational basis for treating differently those juveniles who are convicted by a jury of manslaughter after being trans-

ferred to the regular criminal docket to stand trial for murder and those who are adjudged delinquent on the basis of a court's initial finding that the juvenile has engaged in conduct amounting only to manslaughter.

The defendant's argument appears to be that distinctions in sentencing of juvenile offenders cannot constitutionally be based upon a determination, in advance of trial, that there is probable cause to believe that a juvenile defendant has committed murder. We conclude, however, that even if we assume that the two categories of offender identified by the defendant, i.e., children charged with murder and those charged only with manslaughter, are similarly situated with respect to the statute, there is more than an adequate rational basis for treating them differently.

Our analysis of this claim is essentially the same as that in which we engage today in *State* v. *Matos*, 240 Conn. 743 , 694 A.2d 775 (1997). As with the youthful offender scheme at issue in *Matos*, the legislature has provided a variety of benefits to juvenile defendants. Some of the benefits exist before and during trial, while others exist after the merits of a defendant's case have been decided by a court. Regardless of the timing of the benefits, however, the legislature has chosen to bestow or withhold these benefits as a whole, rather than on a piecemeal basis. It is entirely possible that the legislature decided that, in the best interests of our open public court system, any defendant tried as an adult and exposed to the public for trial should be sentenced as an adult, regardless of the crimes of which he or she ultimately is convicted. The legislature could have reasoned that conferring postverdict benefits, such as more lenient sentencing and erasure of records, on a defendant who, in open court, had been tried as an adult and convicted of a serious crime would damage society's perception of the fair administration of justice. See id. Because there exists a rational basis for this

legislative scheme, we conclude that the legislature's decision to preclude a defendant from seeking the post-verdict benefits of the juvenile statutes once validly transferred to the regular criminal docket does not violate the defendant's right to the equal protection of the laws.

Under the due process analysis in his brief, the defendant asserts that he "is entitled to the full protection of the statutory scheme governing the treatment of juvenile delinquents as set forth in [General Statutes] §§ 46b-126 and 46b-127. Pursuant to that scheme, he would not have been subject to punishment as an adult for the crime of manslaughter in the first degree under § 46b-127 [a] (1). . . . To sentence the defendant as an adult for conviction of a class B felony, manslaughter in the first degree, in violation of this statutory scheme violates his right to due process of law." Although we confess some confusion about the nature of the defendant's claim, to the extent that his claim is that his right to due process was violated because the court failed to follow the relevant statutes, we reject it based upon our prior conclusion that the trial court's rulings were in accordance with those statutes. Moreover, as a matter of procedural due process, we determined in *In re Ralph M.*, 211 Conn. 289, 310, 559 A.2d 179 (1989), that the two statutorily required probable cause hearings as to the murder charge were adequate process for the purpose of subjecting the defendant to the possibility of punishment on that charge. We are at a loss as to why that same process would be constitutionally inadequate for the lesser included offense of manslaughter.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

BORDEN, J., concurring. I agree with and join the majority opinion. I write separately only with regard to

the defendant's equal protection claim. In my view, it is not necessary to engage in the inquiry of whether the particular classification at issue has a rational basis[1] because the defendant cannot surmount the threshold of equal protection analysis, namely, that he is similarly situated to the person with whom he is to be compared.

It is axiomatic that the equal protection clause applies only where the litigant before the court first establishes that he is similarly situated, with respect to the statutory scheme claimed to violate the clause, to someone else who is treated differently from him under the statutory scheme. *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 755, 687 A.2d 506 (1997). If he is so similarly situated, the court must then determine whether the classification effectuated by the statutory scheme survives the applicable level of scrutiny. Id., 755–57.

As the majority opinion makes clear, the defendant seeks to compare himself with those juveniles who are adjudged delinquent based on a finding in the Superior Court for Juvenile Matters that they have committed manslaughter in the first degree. The defendant, however, is not similarly situated, with respect to the juvenile statutes regarding the penal code homicide offenses, to those juveniles.

The appropriate time for this inquiry is not, as the defendant assumes, at the end of the process, when he was acquitted of murder but convicted of manslaughter. The appropriate time is at the beginning of the process because that is when the classification between him and the other juveniles was made. At that time, the state had evidence establishing probable cause that the defendant had committed not only manslaughter, but murder. A juvenile against whom there is sufficient

---

[1] By joining the majority opinion, I also agree with and join its rational basis analysis. The purpose of this concurrence is simply to underscore my conclusion that it is not necessary to engage in that analysis.

evidence for a charge of murder is not, in my view, similarly situated to a juvenile against whom there is only sufficient evidence for a charge of manslaughter. The defendant's equal protection claim founders, therefore, at this threshold stage.