STATE OF CONNECTICUT *v.* JOSE LOUIS MORAN
(SC 16731)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

*(One justice concurring separately)*

Argued March 18—officially released July 8, 2003

*Joseph G. Bruckmann,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan Bene-*

*dict*, state's attorney, and *Terri Sonnemann*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Jose Louis Moran, appeals[1] from the judgment of the trial court sentencing him to a total effective sentence of eleven years imprisonment, execution suspended after eight years, with three years probation, in accordance with his plea of guilty to the crimes of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 (a)[2] and 53a-122,[3] robbery of an occupied vehicle in violation of General Statutes § 53a-136a,[4] and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (2).[5] The defendant claims that the trial court improperly concluded that § 53a-134 (b)[6] required a five

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court. The defendant, thereafter, filed a motion for transfer of the appeal to this court. We granted that motion pursuant to Practice Book § 65-2 and the transfer authority conferred upon us by General Statutes § 51-199 (c).

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars . . . ."

[4] General Statutes § 53a-136a provides: "Any person who commits robbery by taking a motor vehicle from the person of another knowing that such motor vehicle is occupied by such other person shall be imprisoned for a term of three years which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for such offense."

[5] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[6] General Statutes § 53a-134 (b) provides: "Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of

year nonsuspendable mandatory minimum sentence for his conviction of conspiracy to commit robbery in the first degree. Additionally, the defendant claims that if the statutory sentencing scheme requires a five year mandatory minimum sentence for the crime of conspiracy to commit robbery in the first degree, it violates: (1) his right to equal protection as guaranteed by the fourteenth amendment to the United States constitution and article first, § 20, of the constitution of Connecticut;[7] (2) his substantive due process rights under the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut;[8] and (3) his procedural due process rights under the federal constitution because the sentencing scheme is unconstitutionally vague. We disagree and we affirm the judgment of the trial court.

The record reveals the following facts and procedural history relevant to the issues in this appeal. The defendant was implicated, along with two other coconspirators, in the theft of a car and the robbery of an occupied vehicle that had occurred on March 1, 2001. As a result of these incidents, the defendant was charged with larceny in the first degree in violation of § 53a-122 (a) (3),

subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[7] The equal protection clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws. . . ."

Article first, § 20, of the constitution of Connecticut provides in relevant part: "No person shall be denied the equal protection of the law . . . ."

[8] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

conspiracy to commit larceny in the first degree in violation of §§ 53a-48 (a) and 53a-122, robbery in the first degree in violation of § 53a-134 (a) (2), robbery involving an occupied motor vehicle in violation of § 53a-136a, and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (2). Thereafter, in accordance with a plea agreement, the defendant pleaded guilty to the crimes of conspiracy to commit larceny in the first degree, robbery of an occupied motor vehicle and conspiracy to commit robbery in the first degree. In exchange for his guilty plea, the state requested that the trial court sentence the defendant to a total effective sentence of eleven years imprisonment, suspended after eight years, and three years probation.

Subsequently, the defendant moved the trial court to preclude the imposition of a mandatory minimum sentence for conspiracy to commit robbery in the first degree. The state objected to this motion, and the court, prior to sentencing the defendant, heard arguments from both the state and the defendant on this issue.[9] Thereafter, the trial court denied the defendant's motion and rendered judgment pursuant to the terms of the plea agreement.[10] This appeal followed.

[9] The defendant made the same arguments to the trial court that he asserts in this appeal. The state claimed, in the trial court, that this court's decision in *State* v. *Trent,* 182 Conn. 595, 438 A.2d 796 (1981), controls the present case, and that the mandatory minimum sentence for a person convicted of conspiracy to commit robbery in the first degree is nonsuspendable pursuant to § 53a-134 (b).

[10] Specifically, the trial court sentenced the defendant to a term of imprisonment of eleven years, execution suspended after five years, and three years probation, on the count of conspiracy to commit larceny in the first degree, and three years, the mandatory minimum sentence, on the count of robbery of an occupied motor vehicle, eleven years, execution suspended after five years, and three years probation, of which, the trial court held, five years was the mandatory minimum sentence, on the count of conspiracy to commit robbery in the first degree. Further, the court ordered that the two mandatory minimum sentences should run consecutive to each other for a total effective sentence of eleven years, execution suspended after eight years, with three years probation. The defendant does not challenge

## I

The defendant first claims that the trial court improperly concluded that the mandatory nonsuspendable term of imprisonment, set forth in § 53a-134 (b), applies to the offense of conspiracy to commit robbery in the first degree. Specifically, the defendant contends that when the legislature enacted General Statutes § 53a-35a,[11] it eliminated specific language imposing nonsuspendable minimum sentences for certain class B felonies. In doing so, the defendant claims, the legislature intended to eradicate the requirement of a nonsuspendable minimum sentence for a person guilty of conspiracy to commit robbery in the first degree. The state claims that this court's decision in *State* v. *Trent*, 182 Conn. 595, 438 A.2d 796 (1981), controls, and that the mandatory minimum sentence as set forth in § 53a-134 (b) applies in the present case.

The issue presented in this appeal raises an issue of statutory construction, namely, whether under General Statutes §§ 53a-51,[12] 53a-35a and 53a-134 (b), the crime of conspiracy to commit robbery in the first degree is subject to a five year mandatory minimum sentence, over which our review is plenary. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we

any part of his sentence except the trial court's conclusion that the count of conspiracy to commit robbery in the first degree carries with it a mandatory minimum sentence of five years.

[11] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (5) for a class B felony other than manslaughter in the first degree with a firearm under section 53a-55a, a term not less than one year nor more than twenty years, except that for a conviction under section . . . 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years . . . ."

[12] General Statutes § 53a-51 provides: "Attempt and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or is an object of the conspiracy, except that an attempt or conspiracy to commit a class A felony is a class B felony."

seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be the meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; internal quotation marks omitted.) *State* v. *Courchesne,* 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

Thus, we begin our analysis by looking to the language of the statutory scheme at issue. Section 53a-35a, which governs sentences for felonies committed on or after July 1, 1981, provides in relevant part that "the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (5) for a class B felony other than manslaughter in the first degree with a firearm under section 53a-55a, a term not less than one year nor more than twenty years, except that for a conviction under section . . . 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years . . . ." Section 53a-51, governing inchoate crimes, provides that "[a]ttempt and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or is an object of the conspiracy, except that an attempt or conspiracy to commit a class A felony is a class B felony." Moreover, § 53a-134 (b) provides that any person convicted of robbery in the first degree "shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court." It is within this sentencing scheme that we must determine whether the crime of conspiracy to commit robbery in the first degree carries with it a minimum mandatory sentence of five years imprisonment.

In *State* v. *Trent*, supra, 182 Conn. 596, the defendant pleaded guilty to attempted robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-49. On appeal, the defendant claimed that § 53a-51, which provides that an attempt shall be classified as a crime "of the same grade and degree as the most serious offense which is attempted," required that he be sentenced in accordance with the general sentencing provisions outlined in General Statutes § 53a-35,[13] which is

---

[13] General Statutes § 53a-35 (c) provides in relevant part: "Except as provided in subsection (d) the minimum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows . . .

the predecessor to § 53a-35a. Id., 598–99. Specifically, the defendant contended that because robbery in the first degree was classified as a class B felony, § 53a-51 required that the defendant be sentenced according to § 53a-35 (c) (2), the provision that delineated the sentences for class B felonies. Id., 599. Relying on this premise, the defendant in *Trent* then asserted that the language carving out an exception to § 53a-35 (c) (2), prescribing that a person who is convicted under § 53a-134 (a) (2) serve a mandatory minimum sentence, was inapplicable. Id.

In *Trent*, this court rejected the defendant's claim and concluded that, because our statute defining inchoate crimes, § 53a-51, provides that attempt is of the "same grade and degree" as the most serious offense that was attempted, the defendant was subject to the specific sentence delineated for the substantive crime that was attempted. Id., 601. Section 53a-51, this court explained, was patterned after the Model Penal Code, and "followed the recommendation of the American Law Institute that attempts to commit crimes . . . should be graded as seriously as the corresponding substantive offense." (Citations omitted.) Id. Moreover, we determined that the language of § 53a-51, making inchoate crimes of the same grade and degree as the most serious offense that is attempted, "discloses that the legislature intended the specific sentencing structure prescribed for that crime which was the object, albeit unsuccessful, of the attempt. This language demonstrates that careful selectivity of language by the legislature that points unerringly to the conclusion that the sentence for an attempt to commit a crime was to be prescribed in

(2) for a class B, C or D felony the court may fix a minimum term of not less than one year nor more than one-half of the maximum term imposed, except that . . . (B) when a person is found guilty under section . . . 53a-134 (a) (2), the minimum term shall be not less than five years and such sentence shall not be suspended or reduced . . . ."

accordance with the sentencing parameters delineated for the substantive crime which was the object of the attempt." Id.

We find the reasoning of *Trent* persuasive in the present case. Therefore, because the defendant was convicted of conspiracy to commit robbery in the first degree, under the principle we articulated in *Trent*, the sentence for that crime shall be in accordance with the sentencing parameters delineated in § 53a-134 (b), which mandates a five year nonsuspendable mandatory term of imprisonment.

The defendant claims, however, that because the defendant in *Trent* was subject to the sentencing provisions of the predecessor to § 53a-35a, *Trent* does not apply to the present case. Specifically, the defendant claims that the legislature removed the specific language contained in § 53a-35 that required that the minimum term of imprisonment for robbery in the first degree "shall not be suspended or reduced," from § 53a-35a, which controls the present case. The absence of this language, the defendant claims, illustrates the legislature's intent to eliminate the requirement that persons guilty of the crime of conspiracy to commit robbery be subject to a mandatory minimum sentence. We are not persuaded.

Although we agree that § 53a-35a does not include the specific language mandating that a person convicted of robbery in the first degree shall serve a minimum nonsuspendable sentence, the plain language of § 53a-134 (b), the statute delineating the crime of robbery in the first degree, does. Specifically, § 53a-134 (b) requires that "any person found guilty [of robbery in the first degree] shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court." Moreover, under § 53a-51, the crime of conspiracy is of the

"same grade and degree" as the object of the conspiracy, here, robbery in the first degree. In the present case, the object of the conspiracy, namely, robbery in the first degree, carries with it the mandatory nonsuspendable sentence of five years imprisonment required by § 53a-134 (b). Indeed, our review of this court's decision in *Trent* indicates that the defendant in that case relied principally on his construction of § 53a-51, rather than on the specific language of § 53a-35, as the defendant here suggests.

The legislative history of § 53a-35a also is devoid of any indication that the legislature intended to eliminate mandatory minimum sentences for inchoate crimes when it removed the specific language providing that the mandatory sentences were nonsuspendable. Rather, it is apparent to us that the legislature's main focus in enacting § 53a-35a; see Public Acts 1980, No. 80-442, § 10; was to change from indeterminate sentencing to determinate sentencing. See 23 S. Proc., Pt. 10, 1980 Sess., p. 3428, remarks of Senator Salvatore C. DePiano ("[i]n regard to the bill . . . as you know, in our State, we have an indeterminate sentencing procedure in which a sentence is given such as ten to twenty or seven to ten and this bill would in effect do away with indeterminate sentencing and go to determinate sentencing so that when a sentence is issued on a particular case, it will be for a specific number of years and not have a higher load to that particular sentence"). Furthermore, the legislative history indicates that the legislature did not intend to make changes to the mandatory sentences that were already in place. Accordingly, in the House debate, Representative Alfred Onorato stated, in response to an inquiry regarding any increased severity in sentences, "I remark that . . . there are only two changes. One has to deal with sexual assault in the first degree with a deadly weapon. That would be a minimum mandatory five years in prison. The other minimum

mandatory that are in the copy . . . are currently law now. . . . *But as far as changing classifications and changing crimes, the answer is no.*" (Emphasis added.) 23 H.R. Proc., Pt. 14, 1980 Sess., pp. 4314–15.

Thus, contrary to the defendant's assertion that the legislature intended to eliminate the mandatory minimum for conspiracy to commit robbery in the first degree, we conclude that the legislature instead merely specified the mandatory sentences in the statute defining the substantive crime. For instance, in the present case, Public Act 80-442, § 22, amended § 53a-134 to insert subsection (b), which provides for the mandatory nonsuspendable sentence that previously was required in § 53a-35. Consequently, the legislature did not *eliminate* the specific language mandating the minimum nonsuspendable sentences for those convicted of certain crimes; rather, it merely placed the language requiring those mandatory sentences within the statute that delineated the elements of the particular crime. It is evident to us, therefore, that the legislature intended to clarify further that the crime of robbery in the first degree carried with it a minimum sentence by putting that language in the statute delineating the crime itself. See 23 S. Proc., supra, p. 3430, remarks of Senator DePiano ("[t]his bill would further clarify for the following offenses the already required minimums of imprisonment which would have to be imposed . . . robbery in the first degree while armed with a deadly weapon, a class B felony, a minimum term of five years"). Accordingly, we conclude that the trial court properly determined that the defendant, who pleaded guilty to conspiracy to commit robbery in the first degree, was subject to the minimum nonsuspendable sentence set forth in § 53a-134 (b).

## II

The defendant next claims that even if the statutory sentencing scheme imposes a mandatory minimum sen-

tence, the sentencing scheme violates: (1) the equal protection clause of the federal constitution and article first, § 20, of the Connecticut constitution; (2) his substantive due process rights under the federal constitution and article first, § 8, of the Connecticut constitution; and (3) his procedural due process rights under the federal constitution. The defendant contends that interpreting §§ 53a-51 and 53a-134 (b) to require a mandatory minimum sentence violates his equal protection and substantive due process rights because that interpretation would lead to arbitrary and irrational results. Specifically, the defendant claims that that interpretation is arbitrary and irrational because, pursuant to § 53a-51, which provides that a conspiracy to commit a class A felony is an offense with a classification of a class B felony, the more serious offense of conspiracy to commit murder is not subject to a mandatory minimum sentence. The defendant also claims that the sentencing scheme is unconstitutionally vague because it fails to give notice that the crime of conspiracy to commit robbery in the first degree carries with it a nonsuspendable mandatory sentence. The state claims in response that: (1) a rational basis exists for the differences afforded to the two crimes in the sentencing statutes; and (2) that the statutory scheme is not unconstitutionally vague. We address each claim in turn.

## A

The defendant first claims that requiring a minimum sentence for persons guilty of conspiracy to commit robbery while at the same time not requiring the same for those persons guilty of conspiracy to commit murder violates his equal protection rights. To begin, we note that the defendant has not offered any independent analysis of his equal protection claim under the state constitution. We, therefore, will "limit our review to the relevant federal constitutional claim." (Internal quo-

tation marks omitted.) *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998).

"In order to analyze [the defendant's claim], we first must detail the principles applicable to equal protection analysis." *State* v. *Morales*, 240 Conn. 727, 738, 694 A.2d 758 (1997). "First, in general, as in any constitutional challenge to the validity of a statutory scheme, the statut[ory scheme] is presumed constitutional . . . and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . . *Heller* v. *Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)." (Internal quotation marks omitted.) *State* v. *Wright*, supra, 246 Conn. 138–39.

Moreover, "[t]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . *State* v. *Morales*, supra, 240 Conn. 738–39. Thus, the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated. *Darak* v. *Darak*, 210 Conn. 462, 473, 556 A.2d 145 (1989)." (Internal quotation marks omitted.) *State* v. *Wright*, supra, 246 Conn. 139.

"The equal protection clause does not require absolute equality or precisely equal advantages [between such similarly situated persons] . . . . *Ross* v. *Moffitt*, 417 U.S. 600, 612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.*, [200 Conn. 562, 577–78, 512 A.2d 893 (1986)]. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. *Dunn*

v. *Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). . . . *Franklin* v. *Berger*, 211 Conn. 591, 595, 560 A.2d 444 (1989). Where . . . the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. . . . Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, supra, 246 Conn. 139–40.

It is undisputed that the constitutionality of the sentencing scheme under which the defendant was sentenced must be analyzed under rational basis review because it neither implicates a fundamental right, nor affects a suspect group. Thus, we next determine the "analytical predicate" of an equal protection claim, namely, a "determination of who are the persons similarly situated . . . ." (Internal quotation marks omitted.) Id., 141. The defendant's claim relies on a comparison between those who have been convicted of conspiracy to commit robbery in the first degree and those who have been convicted of conspiracy to commit murder. As we have concluded in a similar case, there are two distinct problems with predicating the defendant's equal protection claim on these classifications. See id.

First, conspiracy to commit robbery in the first degree, and conspiracy to commit murder, "constitute two separate and distinct crimes." Id., 142. As we explained in *Wright*, "a defendant who has committed acts satisfying the elements of both crimes could be convicted of and sentenced for both offenses, without violating the constitutional prohibition against double jeopardy." Id. Accordingly, those who conspire to commit robbery and those who conspire to commit murder

"constitute two separate and distinct legal classes and, therefore, necessarily are not similarly situated for purposes of equal protection analysis." Id.

"Second, the defendant does not even attempt to claim that the two classes are similarly situated. His claim, rather, is that those who, like him, have [participated in a conspiracy to commit robbery] have committed a *less* serious crime than those who have [participated in a conspiracy to commit murder], and that, therefore, his class deserves a *less* serious penalty than the latter class. Thus, rather than challenging disparate treatment vis-a-vis some other similarly situated class, the defendant really is claiming that the penal statutes are structured arbitrarily and unfairly as between two distinct, differently situated classes, resulting in arbitrary and unfair treatment to his class." (Emphasis in original.) Id., 142–43.

Thus, although the defendant's claim is "ill-suited to the framework of equal protection"; id., 143; we choose to proceed in the framework of equal protection analysis by "[a]ssuming arguendo that the two categories of defendants identified by the defendant are similarly situated with respect to the [statutory scheme] . . . . Doing so allows us to engage in a rational basis analysis that, for all material purposes, is indistinguishable from the analysis in which we would engage pursuant to a due process claim." (Citations omitted; internal quotation marks omitted.) Id., 143–44; compare *Donahue* v. *Southington*, 259 Conn. 783, 795, 792 A.2d 76 (2002) (under rational basis review of statute challenged on equal protection grounds, "[w]e must decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal" [internal quotation marks omitted]) with *State* v. *Matos*, 240 Conn. 743, 750, 694 A.2d 775 (1997) (rational basis review of statute challenged

on substantive due process grounds requires party claiming constitutional violation to "[prove] that the challenged policy has no reasonable relationship to any legitimate state purpose" [internal quotation marks omitted]).

In *State* v. *Wright*, supra, 246 Conn. 135–36, the defendant was convicted of larceny from the person in violation of General Statutes § 53a-123 (a) (3). On appeal, the defendant claimed that the classification in § 53a-123 (a) (3)[14] of larceny from the person as a class C felony, punishable by a maximum of ten years, violated his equal protection rights because the more serious offense of simple robbery was classified in General Statutes § 53a-136[15] as a class D felony, punishable by only five years imprisonment. Id., 136–37. After concluding that the two classes of crimes were not similarly situated, but nonetheless choosing to proceed with the equal protection analysis, this court concluded that the legislature's decision to classify larceny from the person as a class C felony, while classifying simple robbery as a class D felony, was supported by a rational basis. Id., 143–44. First, this court determined, "the legislature reasonably could have concluded that, as a categorical matter, larceny from the person is a more serious offense than simple robbery, and therefore warrants a more severe penalty." Id., 145. Second, we noted that, "pursuant to its general objective of protecting the welfare of the public, the legislature also has a legitimate interest in deterring crime by setting more severe penalties for crimes that the legislature reasonably perceives

---

[14] General Statutes § 53a-123 provides in relevant part: "(a) A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . .

"(c) Larceny in the second degree is a class C felony."

[15] General Statutes § 53a-136 provides: "(a) A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133.

"(b) Robbery in the third degree is a class D felony."

as being more easily committed than other crimes, regardless of the relative seriousness of the prohibited conduct." Id., 148. Thus, because the legislature's classification of the separate crimes of larceny and simple robbery was supported by a rational basis, the sentence imposed on the defendant as a result of that classification did not violate the defendant's equal protection rights. Id., 151.

We find the reasoning of *Wright* persuasive in the present case, and we conclude that the legislature's decision, requiring a mandatory minimum sentence for those who are found guilty of conspiracy to commit robbery in the first degree, while not requiring a mandatory minimum sentence for those who are found guilty of conspiracy to commit murder, is supported by a rational basis. In our view, it was rational for the legislature to have been more concerned that a court may impose a sentence of less than five years on those who commit conspiracy to commit robbery in the first degree, rather than on those who are guilty of conspiracy to commit murder. Put differently, there is a plausible policy reason for not specifically requiring that a person guilty of conspiracy to commit murder serve a minimum sentence; namely, it is unlikely that a court would impose a sentence of *less* than five years for that particular crime. Rather, the legislature reasonably could have concluded that, notwithstanding the lack of a specific requirement of a mandatory minimum sentence, a court is likely to impose a sentence for conspiracy to commit murder that would exceed or equal a minimum of five years because of the particularly serious nature of that specific crime. Conversely, the legislature reasonably could have determined that courts were less likely to impose a minimum of five years imprisonment on a defendant who is guilty of conspiracy to commit robbery in the first degree. The legislature, therefore, in order to address that possibility,

prescribed a minimum sentence for that particular crime. Accordingly, the sentencing scheme rationally serves the legislature's interest in protecting the general welfare by imposing on a defendant a minimum sentence for a crime that a court might not have imposed otherwise.

Similarly, the legislature reasonably could have intended that persons guilty of conspiracy to commit robbery in the first degree serve a minimum sentence because that crime occurs more often. Thus, the legislative interest in protecting the public welfare by establishing penalties for crimes can be rationally served by providing mandatory minimum sentences for those crimes that occur more frequently than others. This is not to say that the crime of conspiracy to commit robbery in the first degree is *less serious* than the crime of conspiracy to commit murder; it simply means that the legislature acted rationally when it sought to deter certain crimes by enacting a nonsuspendable minimum sentence for a crime that, unfortunately, occurs with *more frequency*. See id., 148 ("pursuant to its general objective of protecting the welfare of the public, the legislature also has a legitimate interest in deterring crime by setting more severe penalties for crimes that the legislature reasonably perceives as being more easily committed than other crimes, *regardless of the relative seriousness of the prohibited conduct*" [emphasis added]). Accordingly, we conclude that the sentencing scheme at issue in the present case is supported by a rational basis.

The defendant, however, relies on this court's decisions in *State* v. *Jenkins*, 198 Conn. 671, 504 A.2d 1053 (1986), and *State* v. *O'Neill*, 200 Conn. 268, 511 A.2d 321 (1986), in support of his claim that the sentencing scheme under which he was sentenced, which punishes a less serious crime more severely than another, more

serious offense, violates his right to equal protection. We are not persuaded.

In *State* v. *Jenkins*, supra, 198 Conn. 672, the defendant, who had been convicted of kidnapping in violation of General Statutes (Rev. to 1985) § 53a-92 (a) (2) (C),[16] was sentenced to a mandatory ten years imprisonment. Although the defendant claimed that his sentence was suspendable, the trial court concluded that the sentencing scheme did not allow the court to suspend the defendant's sentence. Id., 673–74. On appeal, the defendant claimed that the mandatory sentence should not apply to him because someone convicted of kidnapping in the first degree with a firearm, a more serious crime, faced a mandatory minimum sentence of only one year under General Statutes § 53a-92a.[17] Id., 673. After reviewing the relevant legislative history, this court concluded that the difference in sentences was due to a "legislative error that mistakenly assigns a lesser penalty to a greater crime." Id., 677. In order to avoid the "constitutional quagmire" that this court would have confronted had we interpreted the irrational sentencing scheme, we concluded that § 53a-92a (b), which provided for the lesser penalty, governed all prosecutions

[16] General Statutes (Rev. to 1985) § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to . . . (C) terrorize him or a third person . . . ."

[17] General Statutes § 53a-92a provides: "(a) A person is guilty of kidnapping in the first degree with a firearm when he commits kidnapping in the first degree as provided in section 53a-92, and in the commission of said crime he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be convicted of kidnapping in the first degree and kidnapping in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Kidnapping in the first degree with a firearm is a class A felony for which one year of the sentence imposed may not be suspended or reduced by the court."

for kidnapping in the first degree, and we remanded the case for resentencing. Id., 680.

Our decision in *Jenkins* is distinguishable from the present case. First, we concluded in *Jenkins* that it was "not rational and sensible to impose a lesser term of mandatory imprisonment on one convicted of kidnapping with the use of a firearm than on one convicted for a *similar crime* not involving a firearm." (Emphasis added.) Id., 679–80. In those particular circumstances, namely, the existence of two similar crimes with dissimilar sentences, we could not discern a rational basis for the discrepancy in treatment. Conversely, the defendant in the present case seeks to compare the crimes of conspiracy to commit robbery and conspiracy to commit murder, which, as we explained previously, constitute two *separate and distinct* crimes. Therefore, because the two crimes the defendant is attempting to compare in the present case are separate and distinct crimes, it leaves "ample scope for discovery of a rational basis for the different penalties for each offense." *State* v. *Wright*, supra, 246 Conn. 153. Second, in contrast with *Jenkins*, there is no indication that the statutory scheme at issue in the present case, involved any "legislative error . . . ." *State* v. *Jenkins*, supra, 198 Conn. 677.

We also reject the defendant's reliance on *State* v. *O'Neill*, supra, 200 Conn. 268. In *O'Neill*, the defendant was convicted of arson in the first degree in violation of General Statutes § 53a-111 (a).[18] Id., 269. Although the defendant urged the court, at his sentencing, to impose a sentence of ten years imprisonment, suspended after five years, the trial court indicated that,

---

[18] General Statutes § 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . ."

in its view, "the statutory scheme afforded it no discretion but to impose the mandatory nonsuspendable minimum sentence of ten years . . . ." Id., 285. On appeal, the defendant claimed that, pursuant to this court's decision in *State* v. *Dupree,* 196 Conn. 655, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985), his sentence was unconstitutionally arbitrary and irrational because a trial court could suspend a sentence of a person found guilty of arson murder in violation of General Statutes § 53a-54d.[19] *State* v. *O'Neill,* supra, 285–86. Relying on *Jenkins,* this court concluded that it would be arbitrary and irrational for a "defendant who acted with the less culpable intent and who caused a less serious result than a defendant who commits arson murder [to] receive the greater penalty—a mandatory nonsuspend[a]ble ten year minimum term." Id., 289.

Like the defendant in *Jenkins,* the defendant in *O'Neill* was comparing two similar crimes; namely, arson in the first degree and arson murder, thereby rendering it impossible to conceive of a rational basis to support treating the less serious crime more severely than the more serious crime. In the present case, however, the defendant is attempting to compare two separate and distinct crimes. Thus, because of the separate and distinct nature of the crimes of conspiracy to commit robbery in the first degree and conspiracy to commit murder, a rational basis exists for the different treatment that each crime is given in the sentencing scheme.

B

The defendant next claims that the sentencing scheme violates his substantive due process rights

[19] General Statutes § 53a-54d provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

because the sentencing scheme at issue in the present case is irrational in that it provides for a mandatory minimum sentence for persons guilty of conspiracy to commit robbery in the first degree, but does not provide for a mandatory minimum sentence for persons guilty of conspiracy to commit murder. We disagree.

Because the defendant's claim does not implicate a fundamental right, we review the sentencing scheme at issue in the present case under a rational basis test. *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 888, 792 A.2d 774 (2002). In order for a statute to withstand rational basis review, "the state must show only that the law is not arbitrary or capricious, that is, that it bears a reasonable relation to some legitimate state purpose." Id. "The party claiming a constitutional violation bears the heavy burden of proving that the challenged policy has no reasonable relationship to *any* legitimate state purpose . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 750.

Our analysis of the defendant's due process claim mirrors our analysis under the defendant's equal protection claim because both allege that the application of the sentencing scheme in the present case creates irrational results. For the same reasons that we rejected this claim in part II A of this opinion, we conclude that the sentencing scheme at issue in the present case does not violate the defendant's right to due process under the federal constitution.

C

Finally, the defendant claims that the sentencing scheme at issue in the present case is unconstitutionally vague and, therefore, violates his due process rights because it fails to give a person notice that the crime of conspiracy to commit robbery in the first degree

carries with it a nonsuspendable minimum sentence. We disagree.

"The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. *Smith* v. *Goguen*, 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Mitchell* v. *King*, 169 Conn. 140, 142–43, 363 A.2d 68 (1975). *State* v. *Schriver*, [207 Conn. 456, 459–60, 542 A.2d 686 (1988)]. Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . . *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997). Furthermore, [i]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . . Id., 778." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 556, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). We conclude that a person of ordinary intelligence would understand that a person guilty of conspiracy to commit robbery in the first degree would be subject to a mandatory nonsuspendable term of imprisonment.

Section 53a-134 (b) clearly and unequivocally provides that a person guilty of robbery in the first degree by use of a deadly weapon shall be imprisoned for a minimum of five years, which is not suspendable. Additionally, § 53a-51 clearly provides that the crime of conspiracy is of the same grade and degree as the

most serious offense that is attempted, in this case, robbery in the first degree with a deadly weapon. Moreover, after this court's decision in *State* v. *Trent*, supra, 182 Conn. 601, concluding that the crime of attempt is subject to the same sentence as that outlined in the statute delineating the substantive crime, our construction of the sentencing scheme at issue in the present case cannot be considered unexpected. Thus, we conclude that the sentencing scheme at issue in the present case is not unconstitutionally vague.

The judgment is affirmed.

In this opinion BORDEN, KATZ and VERTEFEUILLE, Js., concurred.

ZARELLA, J., concurring. I agree with the majority's conclusion in this case but write separately to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting). I also agree, however, that the majority's reference to the legislative genealogy in the present case is appropriate because General Statutes §§ 53a-35a and 53a-134 (b) both contain substantive sentencing provisions relating specifically to robbery in the first degree.